UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID M. HUEBLER,

       Plaintiff,                     CIVIL ACTION NO. 09-11817

      v.                                DISTRICT JUDGE VICTORIA A. ROBERTS

COMMISSIONER OF               MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION
TO REMAND AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.    PROCEDURAL HISTORY**

    *A.    Proceedings in this Court*

On May 12, 2009, David M. Huebler ("Plaintiff") filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability insurance benefits (Dkt. 3, 10). This matter is currently before the Court on Plaintiff's motion to remand (Dkt. 16) and Defendant's motion for summary judgment (Dkt. 21).

    *B.    Administrative Proceedings*

Plaintiff filed the instant claims on March 13, 2006, alleging that he became unable to work on September 25, 2005 (Tr. 8, 108). The claim was initially disapproved by the Commissioner on May 26, 2006 (Tr. 8, 57). Plaintiff requested a hearing and on July 23, 2008,

Plaintiff appeared with counsel before Administrative Law Judge (ALJ) E. James Gildea, who considered the case *de novo*. In a decision dated December 1, 2008, the ALJ found that Plaintiff was not disabled (Tr. 8-15). Plaintiff requested a review of this decision on December 15, 2008 (Tr. 103). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-1/13B, Tr. 4, 102-7), the Appeals Council, on April 15, 2009, denied Plaintiff's request for review (Tr. 1); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, I find that substantial evidence does not support the Commissioner's determination that Plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for remand be **GRANTED**, Defendant's motion for summary judgment be **DENIED**, and that the findings of the Commissioner be **REVERSED**.

## II.    STATEMENT OF FACTS

### A.    *ALJ Findings*

Plaintiff was 49 years of age at the time of the most recent administrative hearing. Plaintiff's relevant work history included work as a sales manager and co-owner of a cleaning supply business (Tr. 15). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since September 25, 2005 (Tr. 10). At step two, the ALJ found that Plaintiff had the following

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

"severe" impairments: hepatic liver disease with possible cirrhosis and pancreatitis. *Id*. At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id.* Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "light work with some additional limitations. He cannot climb ladders, ropes or scaffolds but can occasionally climb ramps and stairs and occasionally balance, stoop, kneel, crouch and crawl. He should not be exposed to concentrated levels of hazard" (Tr. 13). At step four, the ALJ found that Plaintiff could perform his past work given his RFC. *Id*. Thus, the ALJ denied Plaintiff's claim at step four, and did not proceed to step five.

  B. *Administrative Record*

    1. **Plaintiff's Testimony and Statements**

Plaintiff complains of muscle pain in his upper and lower extremities, as well as muscle weakness (Tr. 201) and alleges that the pain started in 2003 (Tr. 205, 415). He states that he has pain in his arms and "very badly" in his hands, and that the pain in his legs runs through all his muscles from his feet to his pelvic area (Tr. 27). The last date Plaintiff was employed was January 2004, when he had to quit working because of the pain he was experiencing (Tr. 127). Plaintiff has stated that he would like to work if he could make it through the day without having pain (Tr. 205).

At the hearing with the ALJ, Plaintiff stated that his pain was constant and on a scale from one to ten, maintains a level of five. He went on to say: "when I start to do any type of activity like walking or using my hands, then the pain level starts to creep up very high, to the point where I have to stop doing whatever it is I'm doing" (Tr. 26-27). According to Plaintiff,

"at most times it is very painful to walk, sit up, and lift things" (Tr. 127) and when the pain is very bad, he is unable to shower or shave (Tr. 139). Even with pain medication, he states he is only able to sleep for around two hours a night as a result of the pain (Tr. 139) and that the pain can get so bad that it keeps him from sleeping for days (Tr. 127). Plaintiff also claims that he sometimes wakes up in the middle of the night screaming because of the pain (Tr. 205).

Plaintiff admits to taking pain medication to help control his pain so that he can have some range of movement and perform household chores (Tr. 25). However, when he is tired, Plaintiff says he spends half to three-quarters a day sitting in a recliner (Tr. 34) and when he walks farther than 400 or 500 feet, "the pain just increases until I can't walk any further" (Tr. 35). Plaintiff also complained of getting lightheaded when he bends over to pick items off the floor (Tr. 36).

### 2. Medical Evidence

The sole issue raised on appeal relates to Plaintiff's alleged pain syndrome. Therefore, the undersigned only finds it necessary to discuss the medical evidence relating to such syndrome. The record contains the following evidence of Plaintiff's pain disorder: Plaintiff's original treating physician, Dr. Michael Schultz, diagnosed Plaintiff with Chronic Pain Syndrome (Tr. 173). A consulting physician, Dr. Timothy J. Laing at the University of Michigan, diagnosed Plaintiff with Generalized Pain Disorder (Tr. 448, 455). Another consulting physician, Dr. Syed Naqvi, reported that during Plaintiff's October 2005 hospitalization, he experienced a "diffuse sharp abdominal pain" that was "constant [and] nonradiating" (Tr. 325). Dr. Schultz said that after that hospitalization, Plaintiff continued to have the same persistent complaints of muscle pain in the upper and lower extremities as well as

some abdominal pain, muscle weakness and joint aching (Tr. 201, 423). Rheumatologist Dr. Carlos Diola determined on three separate occasions that Plaintiff was suffering from myalgia (muscle pain) (Tr. 408, 412, 462). Dr. Schultz also stated in June 2006 that Plaintiff demonstrated a "generalized loss of strength and reduced capacity for any type of physical activity" (Tr .421).

Regarding muscle weakness, Dr. Schultz found that Plaintiff's muscles "exhibit some mild tenderness" (Tr. 423) and that his motor examination showed "some individual muscle group strength weakness such as grip strength of both hands" (Tr. 479). Lastly, in April 2007, PA-C Eva Michals, filled out a Disability Parking Placard Application because of Plaintiff's Chronic Pain Syndrome and "leg weakness and instability" (Tr. 186).

### C. *Plaintiff's Claims of Error*

Plaintiff raises three issues on appeal, namely: (1) whether the Commissioner failed to recognize all of Plaintiff's severe impairments; (2) whether the Commissioner considered Plaintiff's manipulative restrictions; and (3) whether the Commissioner properly weighed the statements of Plaintiff's treating physicians. As to the first issue, Plaintiff argues that the ALJ should have found at step two that Plaintiff also suffers from the severe impairment of Chronic Pain Syndrome. In support of this argument, Plaintiff points to his diagnoses of Chronic Pain Syndrome and Generalized Pain Disorder as well as the amount of medication he has been prescribed. Plaintiff's second claim of error explains that the combination of Plaintiff's Carpal Tunnel, Raynaud's Phenomenon and manipulative restrictions make it impossible for Plaintiff to perform his past relevant work as a sales manager and co-owner of a cleaning supplies business.

Lastly, Plaintiff avers that the ALJ did not adequately discuss either Dr. Schultz' opinion or the six factors under 20 CFR 404.1527, which addresses evaluating opinion evidence.

## III. DISCUSSION

### A. *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of

witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, *quoting*, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen*, 800 F.2d at 545. Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), *citing*, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B. *Governing Law*

The "[c]laimant bears the burden of proving his/her entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1

(1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also,* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C.    *Analysis and Conclusions*

The undersigned finds that by failing to follow proper procedures in considering the testimony of treating physicians, consulting physicians and Plaintiff, the ALJ failed to recognize that pain and muscle weakness, even if of unclear etiology, could qualify as a disability under sections 216(i) and 223(d) of the Social Security Act. Under step two of the five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a)), the ALJ erred in concluding that Plaintiff's only severe impairments were hepatic liver disease with possible cirrhosis and pancreatitis. This erroneous finding affected the following three steps in the ALJ's evaluation process. At step three, by not considering Plaintiff's pain, the ALJ held that Plaintiff's hepatic liver disease and pancreatitis did not qualify as a disability because they

did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 11, 13). At step four, the ALJ further developed a faulty RFC by failing to recognize Plaintiff's pain syndromes. Therefore, the ALJ erred in concluding at step four that Plaintiff could perform his previous work and thus denying him Social Security disability benefits before going on to step five.

The ALJ held that Plaintiff "has undergone extensive laboratory tests which have not accounted for his pain complaints" (Tr. 12). Because Plaintiff's complaints of weakness and chronic pain "have not resulted in any definable etiology or cause," the ALJ concluded, they "do not fall under any listing classification" in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526 (Tr. 13) and therefore do not qualify as a disability. However, a plaintiff need not prove the exact cause of a symptom to qualify as having a disability, particularly where the plaintiff's impairment is not fully understood. *Cohen v. Secretary of Health and Human Servs.*, 964 F.2d 524 (6th Cir. 1992).

Additionally, the ALJ erred by not giving adequate consideration to the opinions and diagnoses of Plaintiff's treating physicians, Drs. Schultz and Davison, in his discussion of Plaintiff's alleged pain and muscle weakness. In a social security disability proceeding, an ALJ's failure to follow the procedural requirement of identifying the reasons for discounting the opinions of treating physicians and of explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record. *Rogers*, 486 F.3d at 243 (*quoting Wilson*, 378 F.3d at 544). Additionally, 20 CFR 404.1527(d)(2) states that generally more weight is given to the opinions of a claimant's treating physician:

> "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."

First, Plaintiff's original treating physician was Dr. Michael Schultz, until Dr. Schultz' retirement, at which time Plaintiff saw Dr. Davison as his treating physician (Tr. 19). With regard to pain and muscle strength, Dr. Schultz diagnosed Plaintiff with chronic pain and weakness of undetermined etiology, generalized loss of strength, reduced capacity for any type of physical activity and mild muscle tenderness (Tr. 421, 423). Dr. Schultz clarified that although no medical practitioners have been able to diagnose Plaintiff's exact medical condition, "it certainly has not been for lack of trying" (Tr. 202). Dr. Schultz also stated that since Plaintiff was hospitalized in October 2005, he has had the same persistent complaints of muscle pain in the upper and lower extremities as well as some abdominal pain, muscle weakness and joint aching (Tr. 201). Second, Dr. Davison, Plaintiff's second treating physician, treated his "significant pain" with a medication "10 times more potent than morphine" (Tr. 212).

Even where the diagnosis of either Drs. Schultz or Davison conflicted with an opinion of a consulting physician, the ALJ should have given deference to Drs. Schultz and Davison because they were and are, respectively, Plaintiff's treating physicians. The opinion of a consulting physician is not substantial evidence if contrary to the opinion of a treating physician. *Miracle v. Celebrezze*, 351 F.2d 361, 378-79 (6th Cir. 1965). Furthermore, it has repeatedly been held that the opinions of a treating physician are entitled to great weight and generally are entitled to greater weight than the contrary opinions of a consulting physician who has examined the claimant on only a single occasion. *Rogers*, 486 F.3d at 242; *Farris v. Sec'y of Health and*

*Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Hurst v. Scheweiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Stamper v. Harris*, 650 F.2d 108, 111 (6th Cir. 1981); *Branham v. Gardner*, 383 F.2d 614, 634 (6th Cir. 1967).

There are at least two examples of contrasting opinions between treating and consulting physicians in this case. First, Dr. Schultz stated, "I do not believe he [Plaintiff] is a malingerer…Pain is subjective to the patient but it is very real" to Plaintiff (Tr. 202). This opinion is at odds with the opinion of a consulting physician, Dr. Ross Halpern, who said Plaintiff's "medical history is likely to be characterized by excessive and vague physical complaints, weakness, and pain" (Tr. 206-7) and who implied that Plaintiff's financial stress caused him to apply for Social Security disability benefits (Tr. 205). This sole statement led the ALJ to state, despite a lack of foundation, "the lack of much significant income…suggests a secondary motive to apply for disability while, given his divorce and the presence of a daughter who presumably is with his ex-wife, there is also a possibility of other secondary gain motives at work" (Tr. 14-15). Second, Dr. Davison diagnosed Plaintiff in August 2008 with severe sensory neuropathy with myopathy and significant atrophy of the lower extremities with muscle wasting (Tr. 212). This opinion is in contrast to the November 2003 opinion of consulting physician Dr. Devanshu Thakore, who said that Plaintiff did not have any atrophy (Tr. 251). In both instances, the ALJ should have given greater deference to the opinions and diagnoses of Plaintiff's treating physicians, Drs. Schultz and Davison.

Moreover, the ALJ was unjustifiably selective in the number of consulting physicians referenced and the types of comments that each of the cited treating physicians made. The ALJ did not cite the testimony of consulting physicians Dr. Buday or Eva Michals, PA-C which

would have been favorable to Plaintiff. For example, Neurologist Dr. Buday performed an EMG on Plaintiff and diagnosed him with mild carpal tunnel syndrome (Tr. 104) and Eva Michals, PA-C, qualified Plaintiff to use a Disability Parking Placard (Tr. 186) based on his medical condition. Additionally, although the ALJ cited particular findings by Drs. Iftikhar Khan, Carlos Diola and Timothy Laing, he failed to mention diagnoses of the same physicians which were favorable to Plaintiff. Dr. Khan said that "there is some individual muscle group strength weakness such as grip strength of both hands," (Tr. 479) Dr. Diola found that Plaintiff had diffuse joint and muscle pain (Tr. 411) and chronic leg myalgia (Tr. 462-63) and Dr. Laing diagnosed Plaintiff with a "generalized pain disorder" and concluded that Plaintiff "seemed to be debilitated by his diffuse pain" (Tr. 455).

The ALJ further failed to follow proper protocol by not mentioning Plaintiff's subjective testimony of pain and muscle weakness in his opinion. In *Hurst v. Sec'y of Health and Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) the court held that an ALJ must state reasons for crediting or rejecting particular items of evidence *including the subjective testimony of the claimant. See also*, *Wines v. Comm'rs of Soc. Sec.*, 268 F.Supp. 2d 954 (N.D. Ohio 2003); *Thompson v. Apfel*, 199 F.Supp 2d 798, 815 (W.D. Tenn. 2001) (emphasis added). 20 CFR 404.1529(c)(4) states that the ALJ should consider a claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, and evaluate such statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether the claimant is disabled. In this case, the ALJ did not do so. Furthermore, 20 CFR 404.1529(c)(3) lists examples of "other evidence" the court can consider to determine the severity of a claimant's pain or other symptom, including:

> (i) The claimant's daily activities;
>
> (ii) The location, duration, frequency, and intensity of the claimant's pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms;
>
> (vi) Any measures the claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

However, the ALJ did not sufficiently discuss any of these factors in relation to Plaintiff's pain, other than briefly concluding that because Plaintiff operated a tractor on a single known occasion, attends to his personal needs, spends time with friends and family and drives a vehicle regularly, he cannot be disabled (Tr.14). There were several additional pieces of evidence that the ALJ should have taken into consideration, such as Plaintiff's April 2006 Function Report where he listed the activities he is involved in on a daily and weekly basis. According to those statements, Plaintiff watches TV or reads books for most of the day and goes to the grocery store and library only about once a week and only when he feels good enough to do so (Tr. 138). Plaintiff also explained that prior to his current condition, he was able to walk or ride a bike four or more miles, bend down to pick up heavy items, mow the lawn with a push mower and clean his home's eave troughs (Tr. 139, 144). Regarding his current medical condition, Plaintiff stated, he cannot squat or kneel at all and can only stand or sit until his legs begin to hurt (Tr.

143). Plaintiff also said that with regard to walking, if he only has a small amount of pain he can go shopping or cut the grass until the pain intensifies too much, but that if he is experiencing a lot of pain, he is only able to walk to the bathroom or kitchen in his house (Tr. 143). Plaintiff stated that climbing stairs hurts his legs the most, that he sometimes trips while climbing the stairs and that occasionally his leg pain hurts so that he is unable to finish a task he is working on such that he has to "stop and wait until the pain is bearable and then finish the task" (Tr. 145). When Plaintiff experiences pain and needs to rest as a result of walking, he stated that it could take anywhere between ten minutes and three hours before he can resume walking (Tr. 143). None of this evidence was discussed by the ALJ, providing another reason why this case should be remanded for further proceedings.

  The ALJ also failed to explain why Plaintiff's pain and muscle weakness would not qualify as a musculoskeletal impairment under 20 CFR Part 404, Subpart P, Appendix 1. The court in *Johnson v. Sec'y of Health and Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986) held that an ALJ must fully and fairly develop the administrative record. Where the evidence suggests that a claimant may well meet a listed impairment, the ALJ must develop the evidence in order to determine whether or not the listing is met. Consulting physician Dr. R. Michael stated in July 2008 that "Plaintiff has done a variety of physically demanding tasks. The combination of these tasks has aggravated and promoted the musculoskeletal problems that are now diffuse" (Tr. 210). In his decision, however, the ALJ stated that because the etiology of Plaintiff's alleged pain and muscle weakness had not yet been determined, it "cannot be found to represent any other definable severe physical impairment" (Tr. 13). In *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986), the court adopted the statutory

pain standard contained in the Disability Benefits Reform Act of 1984 pursuant to which pain can only be considered in determining disability if there is objective medical proof establishing the presence of disabling pain or objective medical proof of an impairment which could reasonably be expected to result in disabling pain. *McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995); *Shavers v. Sec'y of Health and Human Servs.*, 839 F.2d 232 (6th Cir. 1987). The testimony of the aforementioned treating and consulting physicians establish the existence of pain, therefore, the ALJ should have analyzed in greater depth whether Plaintiff's pain alone qualified as a disability.

In sum, the undersigned recommends that this matter be remanded for further proceedings consistent with the discussion above.

## IV. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for remand be **GRANTED**, Defendant's motion for summary judgment be **DENIED**, and that the findings of the Commissioner be **REVERSED.**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections can constitute a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 142 106 S.Ct. 466, 468 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d

390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Mark A. Randon  
MARK A. RANDON  
UNITED STATES MAGISTRATE JUDGE

Dated: June 17, 2010

## Certificate of Service

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, June 17, 2010, by electronic and/or ordinary mail.

S/Barbara M. Radke  
Judicial Assistant